JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Richard Scaldini, appeals the judgment of the Cuyahoga County Court of Common Pleas that found him in contempt of a court order. He also challenges the underlying gag order that the court found he violated. For the reasons stated herein, we affirm the issuance of the gag order, but we reverse the judgment of contempt.
 {¶ 2} This action was initiated on December 10, 2007, when a verified complaint was filed by fifteen named plaintiffs against nine named defendants, including Scaldini, seeking a temporary restraining order, preliminary and permanent injunctive relief, and declaratory relief.[1] The complaint alleged the wrongful and illegal removal of eleven members of the Board of Trustees of David N. Myers University ("Myers University") in an attempt to force the closure of Myers University. The plaintiffs sought to enjoin illegal, unlawful, and unauthorized acts of the defendants to implement the closing of Myers University, as well as other relief. On the same date, plaintiffs filed an emergency motion for temporary restraining order and preliminary injunction.
 {¶ 3} On the next day, December 11, 2007, the trial court issued an order indicating as follows: "By agreement of the parties, David N. Myers University shall remain as an ongoing entity, up to and including 12/14/07, at which time an effort shall be made by and between the parties in the presence of the court to reach a global resolution of outstanding financial issues." *Page 4 
 {¶ 4} The court also sua sponte issued a gag order that provided as follows: "All parties to this action are hereby restrained from issuing any public comments about the pending status of this litigation. This court will enforce said order with both the civil and criminal contempt powers of the court. Hearing is hereby continued to Friday 12/14/07 at 12:30 PM."
 {¶ 5} On December 13, 2007, a letter to the editor that had been authored by Scaldini appeared in The Plain Dealer. That same date, the trial court scheduled a show cause hearing. Scaldini appeared at the hearing with counsel.
 {¶ 6} The trial court judge indicated that the letter written by Scaldini addressed issues involved in the case and that the court considered the letter to be a violation of the gag order. Scaldini maintained that he was responding to an accusation by The Plain Dealer against his character, that he was concerned for his family, and that he did not comment on the litigation.
 {¶ 7} The letter to the editor was not entered into evidence. However, the trial court quoted a portion of Scaldini's letter that stated as follows: "Regarding Daniel Ho's $1.5 million gift to Myers: We gave his financial officer weekly financial reports in great detail."
 {¶ 8} Although Scaldini's counsel took the position that the letter did not comment on the "pending status of the litigation," the trial court believed that the information in Scaldini's letter dealt with the litigation and that the gag order restrained Scaldini from issuing "any public comment." The trial court found Scaldini in contempt of court. *Page 5 
 {¶ 9} The trial court proceeded to sanction Scaldini for the contempt. Scaldini had represented to the court that he was prepared to resign at the end of the week and that he simply wanted severance, which continued to be his position. As a sanction, the trial court offered Scaldini the option of doing 24 hours in jail or resigning as president of Myers University, effective immediately.
 {¶ 10} Scaldini initially chose to resign. However, Scaldini later asked the court if he could change his choice, whereupon the trial court imposed a sanction of 24 hours in jail. Although the trial court's journal entry set forth only a sanction of 24 hours in jail upon the finding of contempt, the transcript reflects that the trial court stated that Scaldini also was to be removed as president.
 {¶ 11} Scaldini brought this appeal, raising ten assignments of error for our review. The primary challenges raised concern the validity of the gag order and whether Scaldini's conduct violated the gag order.
 {¶ 12} "[T]rial courts have a wide discretion in being able to protect the judicial process from influences that pose a danger to effective justice." Journal Pub. Co. v. Mechem (C.A. 10, 1986), 801 F.2d 1233,1236. This includes the authority to issue gag orders. United States v.Tijerina (C.A. 10, 1969), 412 F.2d 661, 666. Orders imposing restrictions on attorneys, parties, and witnesses are entitled to considerably more deference than prior restraints that are imposed against the press. Pedini v. Bowles (N.D. TX 1996), 940 F.Supp. 1020,1023; see, also, In re T.R. (1990), 52 Ohio St.3d 6, 40 (recognizing that gag orders imposed upon parties *Page 6 
and their counsel "are considered a less restrictive alternative to restrictions imposed directly on the media").
 {¶ 13} It has been recognized that a trial court may sua sponte issue a gag order upon parties to the litigation without an evidentiary hearing. See Affeldt v. Carr (N.D. OH 1986), 628 F.Supp. 1097, 1101. "Gag orders fall within the Court's prerogative to maintain appropriate decorum in the administration of justice and protect the rights of the litigants from prejudice." Id. The standard applied to gag orders imposing restrictions on parties is whether the extra-judicial statements are "reasonably likely" to prejudice the proceedings.Pedini, 940 F.Supp. at 1023. Also, gag orders must be narrowly tailored and must be the least restrictive means available. United States v.Brown (C.A. 5, 2000), 218 F.3d 415, 428. An appellate court reviews a trial court's issuance of the gag order under an abuse of discretion standard. See In re T.R., 52 Ohio St.3d at 45.
 {¶ 14} The gag order in this case was issued sua sponte and prohibited the parties from issuing "any public comments about the pending status of this litigation." At issue in this lawsuit was the future of Myers University. During the contempt hearing, the trial court judge recognized a concern for the reputation and future of the institution in the community and for the students, faculty, and other individuals involved. It is apparent that the trial court judge sought not only to protect the rights of the litigants from prejudice but also to preserve the interests of Myers University.
 {¶ 15} We find that the trial court did not abuse its discretion in issuing the gag order and that the trial court had a reasonable and substantial basis to believe that *Page 7 
the extra-judicial statements by the parties would be reasonably likely to prejudice the proceedings.
 {¶ 16} We next review the trial court's determination that Scaldini's conduct constituted contempt of court. The decision of whether to find one in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. Proof beyond a reasonable doubt is required in criminal contempt cases. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250.
 {¶ 17} Scaldini argues that the gag order prohibited the parties from commenting on the "pending status of the litigation." He states that nothing in the gag order prohibited him from commenting about Myers University or its financial issues. He further states that his letter to the editor involved a personal matter and responded to an attack upon his reputation, and that his conduct did not affect the administration of justice.
 {¶ 18} "The essential elements of criminal contempt are the lawful and reasonably specific order of a court and the willful violation of that order. Criminal contempt involves conduct that is calculated to embarrass, hinder, or obstruct the administration of justice and is used to vindicate the authority of a court and to punish the offending participant." 17 American Jurisprudence 2d (1990), Contempt, Section 5. It is well settled that for a person to be held in contempt of a court order, the court order must contain the specificity necessary for the person to "readily know exactly what duties or obligations are imposed upon him." Highland Square Mgmt, *Page 8 Inc. v. Willis Linnen Co., L.P.A., Summit App. Nos. 21234 and 21243, 2003-Ohio-2630. Otherwise stated, "[a] trial court cannot impose contempt sanctions on a party if the party cannot know whether or not its actions violate the trial court's order." Contos v.Monroe County, Monroe App. No. 04 MO 3, 2004-Ohio-6380.
 {¶ 19} We find that the gag order in this case lacked the specificity necessary to find Scaldini's conduct violated the gag order. The gag order prohibited comments about the "pending status of the litigation." It did not prohibit the parties from issuing any comments to the press that touched upon matters related to the litigation. There is no evidence before this court that Scaldini's letter commented on the status of the litigation. Further, from the record it cannot be said that Scaldini engaged in conduct prejudicial to the administration of justice.
 {¶ 20} We recognize that the trial court issued the gag order in an effort to protect the litigants from prejudice and to preserve the interests of Myers University. We also believe that the trial court judge intended the order to have a broader scope; however, the court's mandate must be clearly expressed rather than implied. See Leffel v.Leffel (Oct. 24, 1997), Clark App. No. 97-CA-20. Accordingly, we affirm the issuance of the gag order, but we reverse the judgment of contempt. The remaining issues raised in appellant's brief are moot.
Judgment affirmed in part and reversed in part.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
 It is ordered that appellant shall pay the costs herein taxed. *Page 9 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MARY EILEEN KILBANE, J., CONCUR
[1] The other parties are not named herein as they have not made appearances in this appeal. *Page 1